[Cite as *Brookwood Presbyterian Church v. Ohio Dept. of Edn.*, 127 Ohio St.3d 469, 2010-Ohio-5710.]

BROOKWOOD PRESBYTERIAN CHURCH, APPELLANT, *v*. OHIO DEPARTMENT OF

EDUCATION, APPELLEE.

[Cite as *Brookwood Presbyterian Church v. Ohio Dept. of Edn.*,

127 Ohio St.3d 469, 2010-Ohio-5710.]

*Charter schools — Eligibility for sponsorship — R.C. 3314.015(B)(3) and (D) and 3314.02(C)(1)(f) — Determination that entity is not education-oriented is appealable.*

(No. 2009-1926 — Submitted June 9, 2010 — Decided November 30, 2010.)

APPEAL from the Court of Appeals for Franklin County,

No. 09AP-303, 2009-Ohio-4645.

_____

PFEIFER, J.

{¶ 1} The issue before us is whether a determination by the Ohio Department of Education pursuant to R.C. 3314.015(B)(3) that an entity is not education-oriented, and thus is ineligible for sponsorship of community schools, is appealable in accordance with R.C. 119.12. We hold that R.C. 3314.015(D) grants such a right to review.

**Factual and Procedural Background**

{¶ 2} In November 2007, appellant, Brookwood Presbyterian Church ("Brookwood"), submitted an application to appellee, Ohio Department of Education ("ODE"), to sponsor community schools in Ohio. Brookwood sought approval as a sponsor pursuant to R.C. 3314.02(C)(1)(f), which allows "education-oriented," tax-exempt entities under Section 501(c)(3) of the Internal Revenue Code to sponsor community schools. Brookwood submitted information regarding both itself and its parent organization, the national Presbyterian Church USA. In March 2008, ODE determined that Brookwood is not eligible to sponsor

community schools, concluding that it is not an "education-oriented" entity as required by R.C. 3314.02(C)(1)(f). Brookwood sought reconsideration of its eligibility to sponsor a community school, and on May 9, 2008, ODE again issued its determination that Brookwood was not eligible. ODE stated, "Despite the contributions of the Presbyterian Church USA, in your original application and in the recently supplied supporting documentation, Brookwood Presbyterian Church *is* the legal entity making application for sponsorship; not the Presbyterian Church USA, nor any of the colleges associated with it. The 501 c(3) [sic] documentation is for the national Presbyterian Church. Thus the national Presbyterian Church should be the applicant, not Brookwood Presbyterian Church. The national Presbyterian Church is clearly organized for religious purposes. Brookwood Presbyterian Church, however, is the named applicant indicated in the original sponsorship application and supported by conversations with John Taracko and others in our office. Neither the national Presbyterian Church nor Brookwood Presbyterian Church is eligible to apply to become a sponsor. Also please know that no church has been approved as a sponsor." (Emphasis sic.)

{¶ 3} Pursuant to R.C. 119.12, Brookwood filed an administrative appeal in the Franklin County Common Pleas Court. ODE filed a motion to dismiss the appeal for lack of subject-matter jurisdiction. The common pleas court granted ODE's motion to dismiss and dismissed the appeal for lack of subject-matter jurisdiction.

{¶ 4} Brookwood appealed to the Tenth District Court of Appeals. On September 8, 2009, the court of appeals affirmed the judgment of the common pleas court. The court of appeals held that although R.C. 3314.015(D) states that ODE decisions disapproving an entity for sponsorship of a community school are appealable under R.C. 119.12, a more specific statute, R.C. 3314.015(B)(3), provides that ODE's determination that an entity is not education-oriented is

"final." The court concluded that the ODE's determination was thus not subject to appeal. 2009-Ohio-4645, ¶ 9-10.

{¶ 5} The cause is before this court upon the acceptance of a discretionary appeal.

## Law and Analysis

{¶ 6} R.C. 3301.13 states the general rule that the ODE "[i]n the exercise of any of its functions or powers * * * shall be subject to Chapter 119. of the Revised Code." One of the statutory functions of ODE is to approve entities to be sponsors of community schools. R.C. 3314.015(A)(2). R.C. 3314.02(C)(1) sets forth six categories of entities that may become community-school sponsors, and R.C. 3314.02(C)(1)(f) makes eligible for sponsorship any qualified tax-exempt entity under Section 501(c)(3) of the Internal Revenue Code that (i) has been in operation for at least five years prior to applying to be a community-school sponsor, (ii) has assets of at least $500,000 and a demonstrated record of financial responsibility, (iii) has been determined by ODE to be an education-oriented entity under R.C. 3314.015(B)(3) and has a demonstrated record of successful implementation of educational programs, and (iv) is not a community school. R.C. 3314.02(C)(1)(f).

{¶ 7} Pursuant to R.C. 3314.015(B)(3), it is up to the ODE to determine, pursuant to criteria adopted by rule, whether the tax-exempt entity applying for sponsorship is education-oriented. R.C. 3314.015(B)(3) further provides, "Such determination of the department is final."

{¶ 8} ODE found that Brookwood is not an education-oriented entity as required under R.C. 3314.02(C)(1)(f)(iii) and denied its application for sponsorship. Brookwood seeks to appeal ODE's determination pursuant to R.C. 3314.015(D). R.C. 3314.015(D) grants a right of appeal to entities disapproved for community-school sponsorship: "The decision of the department to disapprove an entity for sponsorship of a community school or to revoke approval

for such sponsorship * * * may be appealed by the entity in accordance with section 119.12 of the Revised Code."

{¶ 9} The crux of this case is the interplay between R.C. 3314.015(B)(3) and 3314.015(D). R.C. 3314.015(D) grants a right of appeal to entities disapproved for community-school sponsorship; the question is whether R.C. 3314.015(B)(3) takes it away in certain circumstances. ODE asserts that its determination that Brookwood is not education-oriented is final and therefore not subject to appeal based upon R.C. 3314.015(B)(3).

{¶ 10} R.C. 1.51 provides the guiding principle in determining the interaction between statutes: "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both." We should not, however, seek out a conflict where none exists.

{¶ 11} Whether R.C. 3314.015(D) and 3314.015(B)(3) conflict depends upon the meaning of "final" in regard to the board of education's determination of whether an entity is education-oriented under R.C. 3314.015(B)(3). Does "final" mean that the administrative process is complete and the matter is ripe for appeal to the common pleas court, or does "final" mean that the unsuccessful, would-be sponsoring entity is consigned to an administrative abyss? We hold that R.C. 3314.015(B)(3) establishes that a determination that an entity is not education-oriented is a "decision of the department to disapprove an entity for sponsorship of a community school" under R.C. 3314.015(D) and therefore "may be appealed by the entity in accordance with section 119.12 of the Revised Code."

{¶ 12} R.C. 3314.015(D) grants the right to an R.C. 119.12 appeal to any entity disapproved for sponsorship. R.C. 3314.015(B)(3) would conflict with R.C. 3314.015(D) if it stated that the department's determination whether an entity is education-oriented was "not appealable." It does not – it merely says that the determination is "final." We can look to our own jurisprudence and the Ohio Constitution to determine the legal significance of the word "final." In *Walburn*

4

*v. Dunlap*, 121 Ohio St.3d 373, 2009-Ohio-1221, 904 N.E.2d 863, at ¶ 13, this court explained, " 'It is well-established that an order must be final before it can be reviewed by an appellate court. If an order is not final, then an appellate court has no jurisdiction.' *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* [1989], 44 Ohio St.3d [17] 20, 540 N.E.2d 266." Section 3(B)(2), Article IV of the Ohio Constitution grants courts of appeals appellate jurisdiction "as may be provided by law to review and affirm, modify, or reverse *final* orders or actions of administrative officers or agencies." (Emphasis added.) Thus, in our system of law, "final" can mean the opposite of "not appealable."

{¶ 13} Had the General Assembly intended that the department's determination of whether an entity is education-oriented not be subject to administrative appeal, it could have done so by appropriate language, i.e., by specifying that the department's decision is final and not subject to appeal. See *Riedel v. Consol. Rail Corp.*, 125 Ohio St.3d 358, 2010-Ohio-1926, 928 N.E.2d 448, ¶ 9 (General Assembly would have used specific language if it had intended R.C. 2307.93(C) to administratively dismiss an entire tort action instead of simply a claim). In fact, the General Assembly has employed this language carefully to specify when certain final actions are not appealable. See R.C. 2712.21 (decision by common pleas court regarding appointment of arbitrator "is final and not subject to appeal"), 3318.051(E) (decision of School Facilities Commission to approve or not approve transfer of money under section "is final and not subject to appeal"), and 5126.0214 (decision of director of developmental disabilities whether to waive removal requirement "is final and not subject to appeal"). The statute at issue here includes no comparable prohibition against appealability.

{¶ 14} Appellee points to appellate court decisions holding that a statute's characterization of an administrative body's holding as final precludes review through an R.C. 119.12 appeal. See, e.g., *Carney v. School Emps. Retirement Sys. Bd.* (1987), 39 Ohio App.3d 71, 528 N.E.2d 1322 (holding that a statute precluded

an administrative appeal from a decision of the School Employees Retirement System's board because the decision was final according to statute); *State ex rel. Shumway v. Ohio State Teachers Retirement Bd.* (1996), 114 Ohio App.3d 280, 284, 683 N.E.2d 70, fn. 1 (holding that a statute precluded an administrative appeal from a decision of the State Teachers Retirement System board because the statute provided, "Any determination of the board under this division shall be final"); *Heartland Jockey Club, Ltd. v. Ohio State Racing Comm.* (Aug. 3, 1999), 10th Dist. No. 98AP-1465, 1999 WL 566857 (holding that a statute that provides that a decision of the State Racing Commission is "final" is not subject to appeal through R.C. 119.12).

{¶ 15} The cases cited by ODE are inapposite. In those cases, the statutes lacked what is present in this case – a specific, statutory grant of jurisdiction to the trial court to review the decisions of the administrative body pursuant to R.C. 119.12. Here, that makes all the difference.

{¶ 16} Why did the General Assembly term the ODE's determination of whether an entity is education-oriented "final"? Ours is not to question why. But of the four requirements set forth in R.C. 3314.02(C)(1)(f) for a tax-exempt entity to qualify as a community-school sponsor, the board's determination of the other three qualifiers is mechanical: whether the entity "has been in operation for at least five years prior to applying to be a community school sponsor," R.C. 3314.02(C)(1)(f)(i); whether the entity "has assets of at least five hundred thousand dollars and a demonstrated record of financial responsibility," R.C. 3314.02(C)(1)(f)(ii); and whether the entity "is not a community school," R.C. 3314.02(C)(1)(f)(iv). Those factors are black-and-white. Only the "education-oriented" factor requires a nuanced approach requiring a subjective and substantive judgment of the board. It is a determination different in character from the other R.C. 3314.02(C)(1)(f) factors. And by calling that determination

"final" but not calling it "not subject to appeal," the General Assembly has concluded that that judgment is susceptible of review pursuant to R.C. 119.12.

{¶ 17} The ODE asserts that there is a two-tiered process for approving community-school sponsors, a preliminary judgment of eligibility followed by an application review. The ODE argues that the application process is open only to an "eligible entity" and that its R.C. 3314.015(B)(3) "education-oriented" determination is part of determining eligibility to apply for sponsorship. The ODE further argues that the R.C. 3314.015(D) right to appeal is granted only to "eligible entities" disapproved for sponsorship. However, the statutes at issue set up no such two-tiered process and do not use the term "eligible entity." Although the Administrative Code at times uses the term "eligible entity," it does not use that term in describing the right to appeal. Ohio Adm.Code 3301-102-03(G) uses the language of the statute, referring to the right to appeal of "an entity," not "an eligible entity":

{¶ 18} "The decision of the department to disapprove an entity for sponsorship of a community school may be appealed by the entity in accordance with section 119.12 of the Revised Code."

{¶ 19} Thus, even if the ODE employs a two-tiered approval process for community-school sponsorship, the right to appeal applies to an entity disapproved at either tier.

{¶ 20} The determination of whether an entity is education-oriented is substantive and important. R.C. 3314.015(B)(3) and 3314.015(D) should be construed so as not to conflict, allowing an entity to appeal the board's R.C. 3314.02(C)(1)(f)(iii) determination. The board's power to determine whether an entity is education-oriented is no trifle, and the grant of a right to appeal in R.C. 3314.015(D) is a check on that power.

{¶ 21} Accordingly, we reverse the judgment of the court of appeals and remand the cause to the trial court.

Judgment reversed
and cause remanded.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ.,
concur.

BROWN, C.J., and CUPP, J., dissent.

_____

**BROWN, C.J., dissenting.**

{¶ 22} At the heart of this matter is the meaning of the word "final" in
R.C. 3314.015(B)(3). The majority has decided that use of the single word
"final" means final *and appealable*. Because I believe that the correct
interpretation of "final" as used in R.C. 3314.015(B)(3) is that the determination
of the Ohio Department of Education ("ODE") whether an entity is education-
oriented is not subject to appeal under R.C. 119.12, I respectfully dissent.

{¶ 23} The primary assumption for the majority's interpretation is that the
General Assembly used the word "final" as a legal term of art to mean a judgment
or order that is subject to appellate review. The majority further assumes that the
General Assembly would have stated explicitly that determinations of education-
oriented status are "final *and not subject to appeal*" if it had intended there to be
no appeal right under R.C. 3314.015(B)(3), particularly given that R.C.
3314.015(D) grants a general appeal right for ODE denials of applications to
sponsor community schools. The majority cites several statutory provisions in
which the General Assembly has provided explicitly that a decision is "final and
not subject to appeal." See R.C. 2712.21, 3318.051(E), and 5126.0214.

{¶ 24} The majority's assumptions are not borne out by other provisions
of the Revised Code. If the General Assembly so clearly intended the use of
"final" in R.C. 3314.015(B)(3) to mean final *and appealable* without actually
using those words, why is the Revised Code replete with instances in which the
General Assembly explicitly says both when it intends a decision to be reviewable

on appeal? See R.C. 3769.0810(I) (decision by the State Racing Commission to impose certain assessments is "final, subject to appeal under section 119.12 of the Revised Code"), 3905.14(G) (decision by the superintendent of insurance to issue a cease-and-desist order is final, and "[t]he final order may be appealed"), 3905.50(F) ("All final orders and decisions of the superintendent [of insurance] are subject to judicial review"), 4141.26(F) ("The validity of any general order or rule of the director [of job and family services] * * * or of any final order or action of the unemployment compensation review commission respecting any such general order or rule may be determined by the court of common pleas of Franklin county"), 4517.58 (decision of the Motor Vehicle Dealers Board is "final * * * except that any person adversely affected by the decision may appeal in the manner provided by sections 119.01 to 119.13 of the Revised Code"), 4731.23(E) (decision of the State Medical Board is "final * * * except that the certificate holder may appeal in the manner provided by Chapter 119. of the Revised Code"), 4763.11(F) (decision of Real Estate Appraiser Board "is final, subject to review in the manner provided for in Chapter 119. of the Revised Code and appeal to any court of common pleas"), and 5709.22(B) ("The final determination [by the tax commissioner] is subject to appeal"); see also R.C. 5703.70(C)(3), 5711.31, and 5727.47(E). Would it not have been sufficient under the majority's interpretation for the General Assembly to provide simply that decisions under these statutes are final?

{¶ 25} And what is this court to make of the host of other instances in which the General Assembly has simply provided that a decision of an administrative agency or other individual or entity is "final"? See R.C. 122.30(C)(1)(2), 122.42(A)(2), 122.74(A)(2), 124.03(A)(1), 145.01(R)(3), 173.19(F), 742.01(L)(3), 1513.05, 1515.02, 3302.10(J), 3306.34(I), 3307.01(B), 3307.74(E), 3309.01(A) and (B), 3309.31(E), 3311.06(G), 3314.08(O)(2)(d), 3769.02, 3769.089, 5126.281(A)(3), and 5505.01(S)(3). Did the General

Assembly intend for all of these decisions to be final orders subject to review on appeal even where the statutes make no mention of an appeal right?

{¶ 26} The lesson gained from a review of the varying uses of the word "final" throughout the Revised Code is that the word is susceptible of more than one meaning. Where statutory language is susceptible of more than one meaning, the rules of statutory interpretation must be applied to determine the true intent of the legislature. *Wingate v. Hordge* (1979), 60 Ohio St.2d 55, 58, 14 O.O.3d 212, 396 N.E.2d 770. A guiding principle of statutory interpretation is that the statute must be construed as a whole and each of its parts must be given effect so that they are compatible with each other and related enactments. *Humphrys v. Winous Co.* (1956), 165 Ohio St. 45, 49, 59 O.O. 65, 133 N.E.2d 780.

{¶ 27} By interpreting the statutory scheme as establishing a two-stage process for the review of applications to sponsor community schools, R.C. 3314.015(B)(3) can be construed in a way that gives each part of the statute effect and renders the statute compatible with the other statutes governing these sponsorship applications. R.C. 3314.02(C)(1) allows only six categories of entities to sponsor community schools. Therefore, ODE must make a preliminary determination regarding whether an entity falls within one of these categories and is eligible to become a sponsor of a community school. ODE's administrative regulations specifically define an entity that falls within one of the categories enumerated in R.C. 3314.02(C)(1) as an "eligible entity." Ohio Adm.Code 3301-102-02(H). For an entity claiming eligibility under R.C. 3314.02(C)(1)(f), this preliminary determination of eligibility includes a determination, within the discretion of ODE, whether the entity is education-oriented. R.C. 3314.02(C)(1)(f)(iii) and 3314.015(B)(3).

{¶ 28} Once there has been a preliminary determination that an entity is an eligible entity, ODE must review the application in light of its rules regarding the criteria, procedures, and deadlines for processing applications to become a

sponsor of a community school. Ohio Adm.Code 3301-102-03. A decision disapproving an application from an entity listed in R.C. 3314.02(C)(1) is subject to appeal pursuant to R.C. 119.12. R.C. 3314.015(D); see also Ohio Adm.Code 3301-102-03(G).

{¶ 29} Most of the determinations regarding eligibility under R.C. 3314.02(C)(1) are mechanical and involve no exercise of discretion by ODE. Certainly, an ODE determination that an applying entity fails to satisfy one of these mechanical criteria would result in the end of consideration of that entity's application for community-school sponsorship, yet no one could reasonably suggest that such a determination is based upon the merits of the application or that such a determination is entitled to appellate review.

{¶ 30} A finding that an entity is education-oriented admittedly is different from most of the other preliminary eligibility requirements.[1] It contains a subjective component and requires exercise of discretion by ODE. But this determination is no more on the merits of the application than any other determination made by ODE under R.C. 3314.02(C)(1). It is also the only one of the criteria under subsection (C)(1)(f) that the General Assembly found necessary to designate as "final." This language suggests that the General Assembly recognized the potential for attempted litigation on this issue, but intended to foreclose such litigation because it is not a decision on the merits of the application that would be subject to appeal in accordance with R.C. 3314.015(D).

---

1. R.C. 3314.02(C)(1)(e) provides that a community school may be sponsored by a designee of the board of trustees of any of the 13 state universities or the board of trustees itself as long as a mission of the proposed school will be "the practical demonstration of teaching methods, educational technology, or other teaching practices that are included in the curriculum of the university's teacher preparation program approved by the state board of education." R.C. 3314.015(B)(2) provides that ODE shall determine, pursuant to criteria adopted by administrative rule, "whether the mission proposed to be specified in the contract of a community school to be sponsored by a state university board of trustees or the board's designee under division (C)(1)(e) of section 3314.02 of the Revised Code complies with the requirements of that division." Like a determination that an entity is education-oriented, a determination that the mission complies with R.C. 3314.02(C)(1)(e) is final.

{¶ 31} Viewing the ODE's review of a community-school sponsorship application under R.C. 3314.015 as a two-stage process is further supported by the last sentence of R.C. 3314.02(C)(1), which permits any entity that falls within one of the six enumerated categories to enter into preliminary agreements with any person or group of individuals proposing to establish a new community school to finalize plans for the school, to establish a governing authority for the school, and to negotiate contracts. R.C. 3314.02(C)(2). The ability of an eligible entity to enter into preliminary agreements prior to a final decision on the merits of its application to sponsor a community school presumes that there has been a threshold determination by ODE that an entity falls within one of the R.C. 3314.02(C)(1) categories.

{¶ 32} The majority's interpretation renders superfluous the language in R.C. 3314.015(B)(3) that "[s]uch determination of the department is final." If, as the majority contends, a determination that an entity is not education-oriented is a disapproval of the entity for sponsorship of a community school under R.C. 3314.015(D), why did the General Assembly specifically include language in R.C. 3314.015(B)(3) that determinations that an entity is education-oriented are final? Why is a determination regarding whether an entity is education-oriented singled out in the statute?

{¶ 33} The majority claims that it is not our place to question why the General Assembly chose to treat determinations of education-oriented status differently from all other ODE decisions under R.C. 3314.02 and 3314.015. It is precisely our place to do so. It is this court's role to interpret Ohio statutes. That interpretation can be aided by ascertaining the intent of the legislature where the statutory language is susceptible of more than one meaning. In ascertaining legislative intent, this court must presume that the language employed was deliberate and meaningful.

**{¶ 34}** R.C. 3314.015(D) generally grants a right to appeal ODE decisions disapproving an entity for sponsorship of a community school. But R.C. 3314.015(B)(2) and (3) designate as final two types of decisions by ODE: the approval of the mission of schools sponsored by state universities and the determination of whether an entity is education-oriented. By specifying only those determinations as final, the General Assembly clearly intended to convey that these subjective decisions should be treated differently from other subjective decisions made by ODE regarding community-school sponsorship. The only reasonable explanation for the different treatment of these determinations is that the General Assembly intended to provide exceptions to the general appeal right granted in R.C. 3314.015(D) for certain decisions requiring ODE's exercise of discretion.

**{¶ 35}** Additionally, the majority's rejection of the two-stage application process yields strange results. The majority concludes that a decision finding that an entity is not an entity specified in R.C. 3314.02(C)(1) is a decision disapproving the entity for sponsorship of a community school, which would be appealable under R.C. 3314.015(D). Yet the majority also appears to conclude that an ODE determination that an entity does not fall within the group of entities set forth in R.C. 3314.02(C)(1) for any reason other than that the entity is not education-oriented under R.C. 3314.02(C)(1)(f)(iii) is not subject to appeal under R.C. 3314.015(D). The majority has to read language into R.C. 3314.02(C)(1)(a) through (e) and (f)(i), (ii), and (iv) to render these determinations not subject to appeal under R.C. 3314.015(D) in order to justify its conclusion that an ODE determination that an entity is not education-oriented is a decision disapproving the entity for sponsorship of a community school.

**{¶ 36}** Based on the language of R.C. 3314.015 in its entirety and the other statutory provisions regarding community schools, I believe that the General Assembly intended ODE's determination regarding whether an entity is

13

education-oriented not to be subject to review under R.C. 119.12. It is clear to me that the majority believes that an ODE determination that an entity is not education-oriented ought to be subject to review on appeal and not consigned to what it perceives to be "an administrative abyss." Perhaps this would be the wiser course. But the General Assembly has given us a statute that cannot be read reasonably to permit this outcome without reading significant additional language into the statutory scheme and rendering portions of the scheme ineffective or redundant. It is not our place to substitute our views about how the process of applying for community-school sponsorship ought to work for the procedure set forth by the General Assembly. Accordingly, I dissent.

_____

**CUPP, J., dissenting.**

{¶ 37} A plain and fair reading of the statute in question, I believe, is that the decision of the Ohio Department of Education ("ODE") regarding whether the applicant, Brookwood Presbyterian Church ("Brookwood"), is an education-oriented entity is final, in the plain and ordinary sense of the word "final," as that word is used in R.C. 3314.015(B)(3). "Final" in this context means "leaving no further chance for action, discussion, or change; deciding; conclusive [a *final* decree]." (Emphasis sic.) Webster's New World Dictionary, Third College Edition (1988) 506. Contrary to the interpretation of the majority, the legislature has clearly expressed its intent that the decision of ODE on this issue may not be appealed. I would affirm the judgment of the court of appeals.

{¶ 38} My conclusion is not based upon any public-policy considerations, which are not within the province of the courts when the intent of the legislature is clear. It is not for us to decide whether the General Assembly has made a wise policy choice or an undesirable policy choice in entrusting this determination to ODE.

14

**{¶ 39}** I generally agree with most of Chief Justice Brown's analysis, but I would note also that appellant Brookwood, while not granted a statutory right of appeal, is not without a remedy. An action in mandamus is available when a statute makes an agency's decision, such as the one here, "final" in that it may not be appealed through the usual appeals process. See, e.g., *Ohio Academy of Nursing Homes v. Ohio Dept. of Job & Family Servs.*, 114 Ohio St.3d 14, 2007-Ohio-2620, 867 N.E.2d 400, ¶ 26 ("courts have determined that a writ of mandamus provides an appropriate balance between the extreme of allowing no challenge at all and the other alternative of completely ignoring the explicit directive that an agency's particular determination is not meant to be appealable").

**{¶ 40}** In fact, appellant has filed an action in mandamus with this court to challenge ODE's decision. The mandamus action has been stayed pending the resolution of this case. Case No. 2009-2055, *State ex rel. Brookwood Presbyterian Church v. Ohio Dept. of Edn.*, motion for stay granted, 124 Ohio St.3d 1479, 2010-Ohio-430, 921 N.E.2d 249. Appellant alleges in the complaint in that case that it has operated an educational program since 2002 to provide services to special-needs students who are not adequately served in traditional education programs and that students are referred to appellant's program by area schools, public community schools, juvenile court personnel, counseling services, and parents. Based on these allegations, appellant's mandamus action may well have merit. But that action in mandamus is the proper manner in which to address this issue—not this appeal.

**{¶ 41}** Consequently, while I would hold that appellant does not have a right of appeal due to the specific requirement of R.C. 3314.015(B)(3), I would simultaneously lift this court's stay of the presentation of evidence and the briefing of appellant's mandamus action, and proceed to a resolution of case No. 2009-2055. Because the majority decides otherwise, I must respectfully dissent.

_____

Buckley King, L.P.A., Donell Grubbs, and James S. Callender Jr., for appellant.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Elisabeth A. Long, Deputy Solicitor, and Mia Meucci, Assistant Solicitor, for appellee.

_____